# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
LG Cell phone IMEI: 359562-06-021053-7 )
)
)

Case No. H16-75 M

FILED
JAN 1 4 2016
David J. Bradley, Clerk of Court

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, the items of which are currently located at the FBI Field Office 1 Justice Park Drive, Houston, TX 77092

located in the _____Southern_____ District of _____Texas_____, there is now concealed *(identify the person or describe the property to be seized)*:
LG Cell phone IMEI: 359562-06-021053-7

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2113(a) | Bank Robbery |
| 18 USC 2113 (d) | Bank Robbery with deadly weapon |
| 18 USC 924 (c)(ii) | Carrying and Brandishing a weapon |

The application is based on these facts:
see attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Justin R. Widup, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 1/14/16

_____
Judge's signature

City and state: Houston, Texas    John R. Froeschner, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

The Affiant being duly sworn does depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the FBI Violent Crimes Task Force (VCTF), which is comprised of agents from the FBI, officers from the Houston Police Department (HPD), and deputies from the Harris County Sheriff's Office (HCSO). I have been a Special Agent with the FBI for approximately 1 year. Prior to my assignment as a Special Agent, I was a law enforcement officer in the State of Maryland for 10 years. During this time I have conducted and participated in many investigations concerning violent crimes including but not limited to federal firearms violations, Hobbs Act violations and federal bank robberies.

2. This affidavit is being submitted in support of an application which seeks an Order authorizing the search of a **silver LG cellular phone Model # LG-H345, IMEI # 359562-06-021053-7 belonging to Alfonsiya Ward.**

3. The facts contained in this affidavit are based in part upon my own personal participation in this investigation, information provided to me by other law enforcement officers, information provided by witnesses, and my own training and experience as well as that of other law enforcement agencies and officers.

4. Since this affidavit is made for the limited purpose of supporting a search warrant, I have not set forth each and every fact learned during the course of the

investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for a search warrant. Unless otherwise indicated, where actions, conversations, and statements of others are related herein, they are related in substance and in part only.

### Probable Cause

7. On January 6, 2016, at approximately 2:49 pm, Agents with the FBI responded to a reported bank robbery where investigation revealed two suspects entered the Chartway Financial Credit Union, 4373 F.M. 1960 W, Spring, Texas, insured by the NACU, with firearms and demanded the bank tellers to give them the money. The suspects took approximately $1343.05 including $1000.00 in quarters and fled the scene. Witnesses at the bank described the suspects as black males. Witnesses at the bank observed one male holding a phone to his face during the robbery. Additionally, Affiant viewed the surveillance video and observed a black male later identified as Lawrence Leonard holding a phone during the entirety of the bank robbery.

8. On January 8, 2016, at approximately 2:01 pm, Affiant responded to a reported bank robbery at Amegy Bank, 400 N. Sam Houston Parkway E, Houston, Texas, hereinafter "bank", insured by the FDIC. According to witnesses one suspect, wearing a white t-shirt, black pants, visible red undershorts, and black and white shoes, jumped the counter and ordered the teller to give her cash from the drawer while pointing a gun at her. The other suspect, wearing a grey hoodie, black pants, and black and red shoes, entered the lobby, ordered everyone to the ground, and acted as the lobby guard, while pointing the gun at a witness' face. The suspects stole $19,943.70 in U.S. Currency and then fled the bank location. Several witnesses at the bank described the subjects as black

males carrying small, semi-automatic hand guns. An off-duty HCSO Deputy observed the suspects fleeing the bank in a black PT Cruiser.

9. A teller hid a GPS tracking device in U.S. Currency taken from the bank. HPD Officers were able to use the data from the tracking device to conduct a traffic stop on a black Nissan Xterra vehicle, occupied by 4 individuals. The occupants were ALFONSIYA WARD, LAWRENCE LEONARD, Morgan MEYER and DianaCONTRERAS. After the traffic stop another individual, DARRIEN DAVISON, walked back toward the vehicle. Officers recognized DAVISON from still images of the bank robbery as being the subject that jumped the counter.

10. At approximately 4:02pm, HPD took all subjects back to the Amegy Bank to be identified. Three separate witnesses identified DAVISON as the suspect that jumped the counter with a handgun and demanded money from the teller. Two witnesses identified LEONARD as the subject who had a gun, ordered everyone to the floor, and stood in the doorway.

11. All suspects were taken to HPD's Greenspoint sub-station and interviewed. The following information was provided:

12. DAVISON was interviewed and provided a full confession for his role in both robberies. DAVISON advised he was approached by WARD and asked to help him with a bank robbery. On Wednesday, January 6, 2016, WARD drove DAVISON and LEONARD to the Chartway Federal Credit Union, 4373 F.M. 1960 Spring, Texas. DAVISON and LEONARD entered the bank, both armed with guns, and demanded money from the teller. DAVISON said they took $1000 worth of quarters, and fled the scene.

13. On January 8, 2016, WARD again approached DAVISON and LEONARD and asked them to participate in another robbery. DAVISON, LEONARD

and one of the females were in DAVISON'S PT Cruiser, while WARD and the other female were in WARD'S Xterra.

14. According to DAVISON, during the robbery, LEONARD, who was inside the bank was on speakerphone with WARD who was outside in his vehicle. Once they entered the bank, LEONARD ordered everyone to the ground at gunpoint, while DAVISON jumped the counter, and demanded money from the teller. The teller placed the money into a trashcan, and gave it to DAVISON. DAVISON then jumped back over the counter, and gave the trash can to LEONARD. DAVISON and LEONARD exited the bank, and fled the scene in DAVISON'S PT Cruiser. DAVISON was getting instructions via LEONARD on where to meet WARD. WARD directed DAVISON to a neighborhood where he was waiting.

15. DAVISON, LEONARD, and one of the females got into WARD'S Xtrerra. As the police cars were lining up behind the Xterra, DAVISON jumped out of the Xterra after it rounded a corner, out of sight of the police cars. DAVISON felt guilty, and came back for his girlfriend, who was one of the females in the vehicle, where he was placed into custody.

16. DAVISON'S girlfriend CONTRERAS, was interviewed and identified WARD as the subject who planned the robbery, and enlisted DAVISON and LEONARD to help. She confirmed LEONARD was on her phone with WARD during the robbery. She also observed LEONARD and DAVISON run out of the bank with a trash can full of U.S. Currency.

17. DAVISON'S girlfriend gave permission to search her phone. She stated WARD'S phone number is 713-319-7078. After received consent to search DAVISON'S girlfriend's phone the phone log shows an 11 minute 37 second phone call at 1:54 pm on January 8, 2016, to the phone number 713-319-7078, known to be WARD'S phone.

18. DAVISON'S girlfriend also stated that DAVISON, WARD, and LEONARD robbed a bank earlier in the week but was confused on the exact date. She was not present during that robbery, but DAVISON told her they did not get a lot of money. Her phone showed 3 phone calls between her phone and phone number 713-319-7078 on January 6, 2016 between 2:18pm-2:28pm. She stated DAVISON had her phone during this time.

19. While the subjects were taken into custody and interviews were being conducted, the following evidence was obtained: The black PT Cruiser was located a short distance away from the Xterra. The PT Cruiser was reported stolen by the Houston Police Department. Located in the driver's seat of the PT Cruiser, in plain view, was a silver semi-automatic handgun, matching the description of the weapons seen both on still images and described by witnesses.

20. The Xterra was towed from the traffic stop. An inventory search of the Xterra reveled approximately $19,449.00 in U.S. Currency banded with Amegy Bank cash straps, including a GPS tracking device, a silver, semi-automatic handgun, a trash can, a white t-shirt, a grey hoodie, and keys to a PT Cruiser that matched the stolen PT Cruiser recovered a short distance away.

21. Search incident to arrest located $495.00 in U.S. Currency in DAVISON'S shoes.

22. You affiant dialed the number 713-319-7078, the number believed to be used by WARD, and a phone that was located inside of the Xterra began to ring. At the time of processing, WARD gave his phone number as 713-319-7078.

23. On January 8, 2016, the aforementioned cellular telephones were removed during an inventory search of the vehicle, and subsequently transferred to FBI custody, and are currently secured at the FBI office located at 1 Justice Park Drive, Houston, Texas.

24. Based on the foregoing, there is probable cause to believe that Alfonsiya Ward did violate Title 18, United States Code, Sections 2113 and 924. Further there is probable cause to believe that evidence relating to these crimes will be found on the **silver LG cellular phone Model # LG-H345, IMEI # 359562-06-021053-7** belonging to Alfonsiya Ward.

## TECHNICAL TERMS

25. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.

Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. The warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

*Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant being sought would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant

## CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices to seek the items described in Attachment A and Attachment B.

Respectfully submitted,

_____
Justin R. Widup

Special Agent

Federal Bureau of Investigation

Subscribed and sworn to before me
on January 14, 2016:

_____
John R. Froeschner
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## LIST OF ITEMS TO BE SEARCHED AND SEIZED

1. Sliver LG cellular phone, Model LG-H345, IMEI: 359562-06-021053-7

## ATTACHMENT B

## INFORMAITON TO BE SEIZED

1. Any photographs, video files, text or multimedia messages (SMS and MMS), call history or call logs, and contact information, including but not limited to phone numbers stored in the telephone contained within Sliver LG cellular phone, Model LG-H345, IMEI: 359562-06-021053-7.

2. Any and all communications previously received or transmitted, or prepared in contemplation of transmission, including electronic mail or data associated with electronic bulletin board systems, stored on any of the electronic media named above. All electronic communications, including those previously received or transmitted, or held in temporary, intermediate storage incident to transmission, documents, and materials, including those used to facilitate previously received, transmitted, or stored, or prepared in contemplation of transmission, including electronic mail or data associated with electronic bulletin board systems, whether stored on any of the electronic media named above or held in temporary, intermediate storage incident to transmission to the individuals or premises within the scope of this application.

3. Such electronic date in the form of electronic records, documents, and materials, including those used to facilitate communication.

4. "Hidden", erased, compressed, password-protected, or encrypted files.

5. Various file "directories" and the individual files they contain, recently deleted data; scanning storage areas for deliberately hidden files.